**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

DENNIS NELSON,
                              Plaintiff,

    v.                                No. 06-CV-1146
                                  (NAM/DRH)

MR. SCOGGY,[1] Counselor; MS. L. GILLIS,
Department of BHU; MS. FRAISHER,[2]
Doctor; and R. QUINN, C.O.,
                              Defendants.

---

**APPEARANCES:**                         **OF COUNSEL:**

DENNIS NELSON
94-B-0694
Plaintiff Pro Se
Great Meadow Correctional Facility
Post Office Box 51
Comstock, New York 12821

HON. ANDREW M. CUOMO         ADELE M. TAYLOR-SCOTT, ESQ.
New York State Attorney General     Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[3]

    Plaintiff pro se Dennis Nelson ("Nelson"), an inmate in the custody of the New York

---

    [1] The correct spelling is "Scroggy," which will be used herein.  See Scroggy Decl. (Dockwet No. 42-8).

    [2] The correct spelling is "Fraser," which will be used herein.  See Fraser Decl. (Dockwet No. 42-5).

    [3] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

State Department of Correctional Services ("DOCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, four employees of either DOCS or the New York State Department of Mental Health (OMH), violated his constitutional rights under the Eighth Amendment. Am. Compl. (Docket No. 5). Presently pending is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. Docket No. 42. Nelson opposes the motion. Docket No. 46. For the following reasons, it is recommended that defendants' motion be granted.

## I. Background

The facts are related herein in the light most favorable to Nelson as the non-moving party. See Subsection II(A) infra.

While Nelson's amended complaint fails to allege particular dates or times of the events alleged, all named defendants then worked at Great Meadow Correctional Facility ("Great Meadow") and treated Nelson during the time he was incarcerated there between December 2005 and March 2006. Baldwin Decl. (Docket No. 42-3) ¶¶ 4-7; Fraser Decl. (Docket No. 42-5) ¶¶ 1, 3; Hallenbeck Decl. (Docket No. 42-6) ¶ 2; Quinn Decl. (Docket No. 42-7) ¶ 3; Scroggy Decl. (Docket No. 42-8) ¶ 3.

Defendants Fraser, Gillis, and Scroggy worked in the Behavior Health Unit ("BHU"). Fraser Decl. ¶¶ 1, 3; Hallenbeck Decl. (Docket No. 42-6) ¶ 2; Scroggy Decl. (Docket No. 42-8) ¶ 3. The BHU was a separate unit in Great Meadow operated by OMH rather than DOCS. Fraser Decl. ¶ 4. The BHU provided "'behavioral intervention' to inmates, such [as] Dennis Nelson, who have a primary mental health diagnosis . . . ." Fraser Decl. ¶ 5; Scroggy Decl. ¶ 4. The BHU was not a medical unit and was not staffed by medical

2

doctors. Fraser Decl. ¶¶ 6-8; see also Docket No. 42-6 at 1 ("Correction Counselors apply social casework principles to the social, educational and vocational rehabilitation of inmates . . . ."). Medical issues were referred to the medical unit within Great Meadow operated by DOCS. Fraser Decl. ¶¶ 9, 11-12. 14; Scroggy Decl. ¶¶ 5-6. Defendant Quinn was the housing escort officer in the BHU responsible for escorting prisoners to and from the BHU. Quinn Decl. ¶¶ 3-4.

Upon Nelson's arrival at Great Meadow, it was noted that he suffered from a chronic leg wound in his left leg. Collins Decl. ¶ 6. The "leg wound was addressed on at least a weekly basis, and often daily or twice a day by medical personnel." Id. ¶ 7.[4] Treatment of the wound was complicated by Nelson's "history of self-mutilation" as he "would exacerbate the wound and rub feces into it so that it could not heal." Id. ¶ 8. Medical staff found no reason to believe that there existed either imminent danger or the presence of gangrene in Nelson's wound. Id. ¶ 10. This action followed.

## II. Discussion

Nelson asserts that defendants violated his Eighth Amendment rights by interfering and

---

[4] Medical records from December 2005 to December 2006 were filed traditionally. Docket No. 43. These records corroborate the Collins declaration showing approximately ninety-four entries in the records with at least sixty-five concerning dressing or casting changes of the bandages on Nelson's leg. See Docket No. 42-4, Ex. B. Additionally, medical records include approximately fifteen medical refusal forms and approximately forty health entry records where Nelson specifically refused dressing changes or antibiotics. Id. Nelson was also seen by at least three specialists and admitted multiple times to the hospital for various injuries, predominantly self-inflicted. Id. There were at least three notations in the record recognizing the chronic leg condition and commenting on Nelson's history of non-compliance with additional entries indicating Nelson's uncooperative nature with medical staff. Id.

3

being deliberately indifferent to the medical treatment he required for his leg. Nelson also contends that Quinn violated his Eighth Amendment rights by using profane and vulgar language with him on one occasion.[5] Defendants argue that Nelson's constitutional claims are meritless, Nelson has failed to allege the personal involvement of the defendants, and defendants are entitled to qualified immunity.

### A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). It must be apparent that no rational finder of fact

---

[5] Nelson's claims in this regard, even if proven, are insufficient to state a constitutional claim as the Second Circuit has held that allegations of verbal harassment or profanity, without physical injury or damage, do not state a claim under § 1983. Purcell v. Coughlin, 790 F.2d 263, 265 (2d Cir. 1986).

could find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special solicitude. Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir.2006); see also Sealed Plaintiff v. Sealed Defendant # 1, 537 F.3d 185, 191-92 (2d Cir.2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds pro se, ... a court is obliged to construe his pleadings liberally.' " (citations omitted)). However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. Anderson, 477 U.S. at 247-48.

### B. Eighth Amendment

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment." U.S. Const. amend. VIII. This prohibition extends to the provision of medical care. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). The test for a § 1983 claim is twofold. First, the prisoner must show that the condition to which he was exposed was sufficiently serious. Farmer v. Brennan, 511 U.S. 825, 834 (1994). Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm. Id. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Id. at

844.

"'Because society does not expect that prisoners will have unqualified access to healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim.  Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003)(quoting Hudson v. McMillian, 503 U.S. 1,9 (1992)).  Because there is no distinct litmus test, a serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain."  Brock v. Wright, 315 F.3d 158, 162-63 (2d Cir. 2003) (citing Chance, 143 F.3d 698, 702 (2d Cir. 1998)).  The severity of the denial of care should also be judged within the context of the surrounding facts and circumstances of the case.  Smith, 316 F.3d at 185.

Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs."  Chance, 143 F.3d at 702.  Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."  Estelle v. Gamble, 429 U.S. 97, 104 (1976).  "Mere disagreement over proper treatment does not create a constitutional claim" as long as the treatment was adequate.  Chance, 143 F.3d at 703.  Thus, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists . . .  are not adequate grounds for a section 1983 claim."  Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001).

Defendants contend first that Nelson has failed to demonstrate an objectively serious

6

medical need with his chronically ulcerated left leg.  However, medical records indicate that the leg was often oozing and infected and required constant care.  Having a gaping and oozing wound that, for whatever reason, would not heal constitutes a condition which a reasonable physician and person would find required treatment.  See Smith v. Carpenter, 316 F.3d 178, 186-87 (2d Cir. 2003) ("the failure to provide treatment for an otherwise insignificant wound may violate the Eighth Amendment if the wound develops signs of infection, creating a substantial risk of injury in the absence of appropriate medical treatment."); Odom v. Kerns, no. 99-CV-10668 (KMK) (MHD), 2008 WL 2463890, at *7-8 (S.D.N.Y. June 18, 2008) ("holding that cuts and open wounds could constitute serious medical need).  Additionally, the need for repeated dressing changes may significantly affect daily life activities.  Accordingly, viewing the facts in the light most favorable to Nelson, he has demonstrated a serious medical need.

However, Nelson has failed to demonstrate that any defendant was deliberately indifferent to, or delayed, his medical treatment.  First, none of the defendants were responsible for the medical treatment of which Nelson claimed he was deprived.[6]  To the

---

[6] In the alternative, Nelson fails to establish that any defendant was personally involved with the care and treatment of his leg wound.  "'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)).  Thus, supervisory officials may not be held liable merely because they held a position of authority.  Id.; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).  However, supervisory personnel may be considered "personally involved" if:

> (1) [T]he defendant participated directly in the alleged constitutional violation;
>
> (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;

extent that defendants were responsible for referring Nelson for treatment, the record is replete with instances of Nelson receiving medical care by his admission for hospitalizations and examination by the medical staff for cleaning and rebandaging his wound.[7] The multitude of medical entries indicates that Nelson was repeatedly referred to the medical department by defendants and the BHU. Such actions belie any claims of denial or deliberate indifference.

Furthermore, to the extent that Nelson's medical treatment was delayed, much of the delay was due to his own refusal to cooperate with medical staff and his self-mutilations. Nelson's actions to thwart the medical treatment of his wound cannot be construed as interference or indifference by anyone else. Nelson's complaints that he did not receive medical intervention immediately upon his request are also insufficient to sustain an Eighth

---

> (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;
>
> (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or
>
> (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)). The evidence is uncontradicted that none of the defendants were directly involved with the provision of his medical care, which is the basis for the current claim. Additionally, there are no contentions that Nelson was subject to an unconstitutional policy or that defendants had the authority to create such a policy. Lastly, Nelson fails to allege, and the record cannot support, any contentions that defendants were grossly negligent in hiring or supervising employees.

[7] To the extent that Nelson asserts that any unnamed third parties on the medical staff were deliberately indifferent to his medical treatment, such claims would be futile for the same reasons.

Amendment claim. See Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986) ("The Constitution does not command that inmates be given the kind of medical attention that judges would wish to have for themselves. The essential test is one of medical necessity and not one simply of desirability.") (internal quotation marks and citations omitted). Any complaints that Nelson should have received treatment whenever he demanded are untenable. Id. Moreover, the record clearly establishes that the medical treatment Nelson received complied with constitutional guarantees as it was appropriate, timely, and delayed only by Nelson's own actions.

Accordingly, defendants' motion for summary judgment should be granted.

### C. Qualified Immunity

Defendants claim that even if Nelson's constitutional claims are substantiated, they are entitled to qualified immunity. Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003). However, even if the constitutional privileges "are clearly established, a government actor may still be shielded by qualified immunity if it was objectively reasonable for the . . . official to believe that his [or her] acts did not violate those rights." Smith v. City of Albany, No. 03-CV-1157, 2006 WL 839525 *16 (N.D.N.Y. Mar. 27, 2006) (quoting Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted)).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights, of which a reasonable person would have known, were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230.  Here, the second prong of the inquiry need not be reached concerning Nelson's claims because, as discussed supra, accepting all of Nelson's allegations as true, he has not shown that any of defendants violated his constitutional rights.

Accordingly, in the alternative, defendants' motion should be granted on this ground.


### III.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion for summary judgment (Docket No. 42) be **GRANTED** and that judgment be granted to all defendants on all claims.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated:  November 12, 2009
       Albany, New York

                                       David R. Homer
                                       U.S. Magistrate Judge